IN RE ESTATE OF WESLEY JOHNSON, DECEASED.
ELM CREEK STATE BANK, ELM CREEK, NEBRASKA, A CORPORATION, BY AND THROUGH THE FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER, APPELLEE, V. ANNA L. JOHNSON, ADMINISTRATRIX OF THE ESTATE OF WESLEY JOHNSON, DECEASED, APPELLANT.
ELM CREEK STATE BANK, ELM CREEK, NEBRASKA, A CORPORATION, BY AND THROUGH THE FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER, APPELLEE, V. ANNA L. JOHNSON, APPELLANT.
236 N. W. 2d 838

Filed December 31, 1975. Nos. 40115, 40116.

David Jorgensen of Nye, Wolf & Hervert, for appellant.

Thomas Tye of Tye, Worlock, Tye, Jacobsen & Orr, for appellee.

Heard before SPENCER, McCOWN, and NEWTON, JJ., and WEAVER and BLUE, District Judges.

BLUE, District Judge.

Wesley Johnson and Anna L. Johnson on April 2, 1973, executed a promissory note to the Elm Creek State Bank, Elm Creek, Nebraska, in the sum of $27,000. On May 30, 1973, Wesley Johnson died. A claim was filed in his estate for the amount of the above note by the Elm Creek State Bank through the Federal Deposit Insurance Corporation, receiver. The claim was allowed in the county court and an appeal was taken to the District Court for Buffalo County, Nebraska.

Elm Creek State Bank by and through the Federal Deposit Insurance Corporation, receiver, also filed an action in the District Court for Buffalo County, Nebraska, against Anna L. Johnson. The basis of this action was the promissory note of $27,000 that she executed with her husband, and which also was the basis of the claim in the county court.

A jury was waived and trial was held by the court on the appeal from the order allowing the claim in the estate. At the close of the evidence it was stipulated that the evidence presented in connection with the claim (with the exception of exhibit 6, an authorization for insurance) should be received in the case involving Elm Creek State Bank v. Anna L. Johnson. The trial court entered judgment for the bank in the sum of

$31,433.92 in both cases, collectible only once. Appellant's motions for new trials were overruled, and these appeals followed. We affirm the judgment of the trial court.

The evidence presented during the trial is that on the same day that Wesley Johnson and Anna L. Johnson executed the note for $27,000, they also executed a note for $10,500; one for $5,000; and Wesley Johnson executed a note for $6,400; all to the Elm Creek State Bank. The note for $27,000 upon which these actions were brought shows on its face that Wesley Johnson indicated he desired credit life insurance at a premium charge of 75 cents per $1,000 per month. Apparently the same indication was made on the other notes. On May 30, 1973, Wesley Johnson died and credit life insurance in the total amount of $15,000 was applied to the outstanding notes that were owing by the Johnsons to the bank. There is testimony that the method of pro rating the proceeds among the various notes was approved by Anna L. Johnson. Mrs. Johnson also contributed to the payment of the notes. The promissory note for $27,000 was not paid from the insurance proceeds or by Anna L. Johnson.

The evidence shows that the only credit insurance available to Wesley Johnson was a group life insurance plan with Lincoln Benefit Life Company. Under the terms of this group policy, the maximum amount of protection that any one insured could obtain was $15,000.

Appellant contends that since Wesley Johnson signed a statement on the note form that he desired life insurance coverage, the bank was obligated to procure this insurance and since it had not, it could not recover. The appellant in support of this contention cites several cases which we believe not applicable to the facts here. For instance, in Mid-America Corp. v. Roach (Okla.), 412 P. 2d 188, cited by appellant, the lending agency actually agreed to procure insurance and did in fact for a time. Midwest Lumber Co. v. Dwight E. Nelson

Constr. Co., 188 Neb. 308, 196 N. W. 2d 377, mentioned in appellant's brief, is not on point since in that case there was an agreement to procure insurance. In the promissory note form, Wesley Johnson simply indicated that he desired credit insurance on the $27,000 note. The evidence does not show that the bank agreed to procure the insurance, nor is there evidence that the borrowers were under the assumption that they were insured for the full amount of this note.

There is evidence indicating the Johnsons were aware that there was only one $15,000 policy. Welsey Johnson was in the construction business and had dealings with and borrowed money from the bank over a period of several years. Anna L. Johnson was the bookkeeper for the business. She testified that debit slips from the bank appeared in each monthly statement indicating a charge of $11.25 for credit insurance. Since the notes show that the premium was 75 cents per month for $1,000 coverage, certainly this constituted notice that the total coverage was only $15,000. Also, on July 27, 1971, Wesley Johnson signed an authorization for the bank to withhold this premium. This authorization clearly stated that the maximum insurance coverage was $15,000. No other authorization was ever signed. At one point in the testimony, Mrs. Johnson stated that she was aware that the total coverage was $15,000.

Appellant claims the bank should be precluded from recovering on this note in that it failed to comply with section 44-1707, R. R. S. 1943. This section requires among other things that the policy of credit insurance or certificate be delivered to the debtor. Apparently this was not done. The statute is silent as to the liability of a bank to a borrower if it fails to comply with the statutory requirements. Presumably these requirements were enacted to give the borrower notice. In this case there is evidence that the borrowers were quite aware that total insurance coverage was $15,000. The trial court so held.

Appellant asserts that the $27,000 note involved in this action was a partial renewal of a $15,000 note given to the bank on March 1, 1971, by Wesley Johnson. Appellant claims that at that time the chairman of the board of the bank fraudulently induced Welsey Johnson to invest the $15,000 in worthless debentures. It is argued, therefore, that the bank should not be permitted to recover this amount. There is no evidence in the record that supports this contention. In the transcript from the county court there are copies of proceedings in the District Court for Buffalo County, Nebraska, in the case of Anna L. Johnson, Administratrix of the Estate of Wesley Johnson, deceased v. Ronald Bycroft. That action involved the sale of certain debentures to Wesley Johnson by Bycroft, however, those proceedings were not offered into evidence or included in the bill of exceptions. We have stated many times that evidence cannot be considered by this court unless it is included in the bill of exceptions. Dilsaver v. Pollard, 191 Neb. 241, 214 N. W. 2d 478.

In this case, the parties waived a jury trial and the matter was tried to the court. It was for the court to determine not only the law applicable to the case, but it was also the trier of the facts. In a jury-waived action, the judgment of the District Court on the facts has the same force as a jury verdict and will not be set aside if there is sufficient competent evidence to support it. Burhoop v. Pegram, 194 Neb. 606, 234 N. W. 2d 828; Winchell v. National Bank of Commerce Trust & Savings Assn., 181 Neb. 870, 152 N. W. 2d 2.

In this case there is sufficient competent evidence to support the judgment of the trial court.

AFFIRMED.