FIRST SECURITY SAVINGS, APPELLANT, V. AETNA CASUALTY AND
SURETY COMPANY, APPELLEE.
445 N.W.2d 596

Filed September 15, 1989.   No. 87-897.

James B. Cavanagh, of Erickson & Sederstrom, P.C., for
appellant.

Rodney M. Confer, of Knudsen, Berkheimer, Richardson &
Endacott, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

The plaintiff-appellant, First Security Savings, a
state-chartered industrial loan and investment company,
challenges the district court's sustainment of defendant-
appellee Aetna Casualty and Surety Company's
motion for summary judgment in this suit on a discovery
bankers blanket bond, pursuant to the terms of which Aetna
undertook to indemnify First Security for certain losses. We
affirm.

So far as is relevant to this inquiry, the bond covered any loss
which resulted directly from the dishonest or fraudulent acts of
the insured's employee and which was discovered during the
period of the bond's existence, irrespective of when the loss
occurred. The bond required, among other things, that the
insured "within six months after such discovery furnish to the

Underwriter affirmative proof of loss with full particulars." The bond further provided:

> At any time prior to the termination or cancellation of this bond as an entirety, whether by the Insured or the Underwriter, the Insured may give to the Underwriter notice that it desires under this bond an additional period of twelve months within which to discover loss sustained by the Insured prior to the effective date of such termination or cancellation and shall pay an additional premium therefor.

The subject bond became effective on April 11, 1977, was renewed for an additional 3 years as of April 11, 1980, and, since First Security elected not to purchase the extended coverage available to it under the last-mentioned bond provision, was terminated "effective from and after the 11th day of April, 1983." (According to *First Sec. Sav. v. Kansas Bankers Sur. Co.*, 849 F.2d 345 (8th Cir. 1988), First Security obtained a new bond from a different insurer effective April 11, 1983, which was held not to cover the losses sought in that case because they were determined to have been discovered before the new bond took effect.)

First Security's petition in this case alleges that its president, one James Gillette, "dishonestly and fraudulently misappropriated and converted" its funds in a variety of ways. Aetna denied liability on the grounds, among others, that First Security did not discover any loss within the period of the bond's existence and, further, failed to provide a timely proof of loss.

The evidence establishes that First Security's first communication with Aetna concerning this matter was by a letter dated April 13, 1983, which advised that First Security had been informed by regulatory authorities of "possible violations" of law by Gillette related to First Security Bank and Trust Company, an affiliate of First Security, and that it was "likely that similar misconduct in connection with First Security Savings Company occurred. If so, a loss covered by your bond will undoubtedly result."

By cover letter dated October 11, 1983, First Security submitted to Aetna a proof of loss in the amount of $89,194.02

relating to First Security's discovery of Gillette's allegedly fraudulent involvement in the Gillette-Morton transaction. The proof of loss is dated October 11, 1983, at the top and October 12, 1983, at the bottom and is stamped as received by Aetna on October 17, 1983. The proof of loss states, "This particular loss was first discovered in early May, 1983 . . . ."

Thereafter, on March 29, 1984, Aetna received a second proof of loss, dated March 5, 1984, and entitled "Initial Proof of Loss," in which First Security claimed the amount of $2,176,861.60 as the result of Gillette's allegedly fraudulent involvement in the Copple transactions. This document also reasserted the loss which was the subject of the October 1983 communication.

In *First Security Bank v. New Hampshire Ins. Co.*, 232 Neb. 493, 441 N.W.2d 188 (1989), we held that in order for an insured to recover under a discovery bankers blanket bond, the insured must establish that it (1) discovered the loss within the period of the bond's existence, (2) furnished written notice to the underwriter at the earliest practicable moment after discovery of the loss, and (3) furnished the underwriter proof of loss with full particulars within the time specified by the bond.

Resolving the confusion as to the date of the October 1983 proof of loss in favor of First Security and thus assuming that that document was submitted seasonably, the fact remains that the loss described therein was, by First Security's own admission, not discovered within the period of the bond's existence. Thus, the loss which is the subject of that communication is not covered by the bond.

The March 1984 proof of loss clearly was not submitted to Aetna within 6 months of the termination of the bond as was required; consequently, the losses reported in the March letter are likewise not covered. First Security's argument that the March 1984 proof of loss merely amended and thus related back in time to its October 1983 submission is untenable. The later submission added a series of transactions which were not mentioned in the earlier submission and increased First Security's claim by more than $2 million. There can be no question but that the March 1984 letter constituted a new, and untimely, proof of loss.

The record discloses that there exists in this case no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from the material facts and that Aetna, as the moving party, is entitled to judgment as a matter of law. Accordingly, the district court properly granted Aetna's motion for summary judgment. *Gatzemeyer v. Neligh Township, ante* p. 329, 445 N.W.2d 593 (1989); *State Farm Fire & Cas. Co. v. Victor,* 232 Neb. 942, 442 N.W.2d 880 (1989).

AFFIRMED.