**WOODSTOCK RESORT CORPORATION, Plaintiff**

v.

**SCOTTSDALE INSURANCE COMPANY, Defendant.**

No. 2:95–cv–148.

United States District Court, D. Vermont.

Dec. 22, 1995.

John Paul Faignant, Miller & Faignant, P.C., Rutland, VT, for plaintiff.

Karen McAndrew, Dinse, Erdmann, Knapp & McAndrew, Burlington, VT, for defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a declaratory judgment action. Woodstock Resort Corporation ("Woodstock") asks this Court to declare that Scottsdale Insurance Company ("Scottsdale") has a duty to defend under the terms of a policy of insurance issued by it to Woodstock. Scottsdale has moved this Court to dismiss the action for lack of subject matter jurisdiction, or, in the alternative, to abstain from deciding the issue of insurance coverage in federal court. Woodstock has moved to amend its complaint to allege diversity of citizenship as the basis for jurisdiction. This order addresses Scottsdale's motion to dismiss, Woodstock's motion to amend having been granted by separate order (paper 12).[1]

### I. BACKGROUND

The pleadings in this case reveal the following facts. In August, 1991, Clement, a former Woodstock employee, sued Woodstock in Windsor Superior Court in Woodstock, Vermont. The complaint, arising out of Clement's discharge from employment, alleged breach of contract, intentional infliction of emotional distress, and violation of public policy, and sought exemplary damages.

Woodstock tendered this complaint to Scottsdale, its insurer on a general liability policy. Scottsdale declined coverage on the grounds that the allegations did not satisfy the policy's definition of occurrence; that the damages claimed did not satisfy the policy's definitions of injury or damage; and that the policy did not extend coverage for wrongful termination. Woodstock brought this action, seeking a judgment that Scottsdale was required, under the terms of its insurance policy, to defend Woodstock against the underlying complaint. Scottsdale then moved to dismiss.

### II. SECTION 1332(C) JURISDICTION

Section 1332(c) of Title 28, which for the purposes of federal court diversity jurisdiction treats a corporation as a citizen "of any State by which it has been incorporated and of the State where it has its principal place of business," contains the following proviso:

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business ...

28 U.S.C. § 1332(c)(1). Congress enacted the proviso "to eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant." *Northbrook National Insurance Co. v. Brewer*, 493 U.S. 6, 10, 110 S.Ct. 297, 299, 107 L.Ed.2d 223 (1989) (citing U.S.Code Cong. & Admin.News 1964, pp. 2778–2779).

Woodstock has amended its complaint to allege diversity of citizenship between itself and Scottsdale under 28 U.S.C. § 1332(c)(1). Scottsdale has suggested that the "direct action" proviso in § 1332(c)(1) applies to situations in which insureds bring suit against their own insurance companies, and that therefore Woodstock's claim of diversity jurisdiction is defeated.

One published opinion in this circuit which has dealt squarely with this contention held that the § 1332(c)(1) proviso did not apply to a suit brought by an insured against his own insurer. *Mazzuka v. SMA Life Assurance Co.*, 726 F.Supp. 1400 (E.D.N.Y.1990). The Second Circuit, moreover, has held in *dicta* that:

> Because the § 1332(c) proviso is applicable when the insurer stands in the shoes of its legally responsible insured, who would traditionally be a defendant, the general rule is that the proviso does not affect suits against the insurer based on its independent wrongs: such as actions brought

---

1. Defendant requested oral argument on its Motion to Dismiss. The Court finds that the issues have been well briefed and thus declines to hear oral argument, pursuant to Local Rule No. 5(a)(4).

against the insurer ... by the insured for failure to pay policy benefits ...

*Rosa v. Allstate Insurance Co.,* 981 F.2d 669, 675 (2d Cir.1992). *Accord Bowers v. Continental Insurance Co.,* 753 F.2d 1574 (11th Cir.), cert. denied, 473 U.S. 906, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985); *Hayes v. Allstate Insurance Co.,* 722 F.2d 1332 (7th Cir. 1983); *Velez v. Crown Life Insurance Co.,* 599 F.2d 471 (1st Cir.1979). *See generally* 13B Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3629, at 674–75 (1984).

■ Since Woodstock is bringing an action against its own insurer for refusing to defend or provide coverage for a claim made against it, the Court concludes that the suit is not a "direct action" as that term has been employed in 28 U.S.C. § 1332. Scottsdale is deemed to be a citizen of its state of incorporation and the state in which it has its principal place of business. Diversity therefore exists, and Scottsdale's motion to dismiss for lack of jurisdiction over the subject matter is denied.

### III. ABSTENTION

Scottsdale seeks in the alternative for the Court to exercise its discretion under the Declaratory Judgment Act to abstain from deciding this case, on the ground that the issue is one of state law which is amenable to resolution by a state court.

28 U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The United States Supreme Court has recently reaffirmed that this statute confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* — U.S. —, —, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995).

In *Wilton,* underwriters' federal declaratory judgment action seeking a ruling that their commercial liability insurance policies provided no coverage was appropriately stayed during parallel state court proceedings. The Court stressed that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." — U.S. at —, 115 S.Ct. at 2143.

The exercise of this Court's discretion is governed by the standard set forth in *Brillhart v. Excess Insurance Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), rather than the "exceptional circumstances" test set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Wilton,* — U.S. at —, 115 S.Ct. at 2142.

*Brillhart* involved a suit for declaratory judgment to determine rights under a reinsurance agreement. A garnishment proceeding was pending in state court at the time, in which the plaintiff sought to recover on a default judgment obtained against the defendant's insured. In that case, the Court ruled that

> it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495, 62 S.Ct. at 1175–76.

■ In deciding whether to dismiss a declaratory judgment action the Court should consider whether the issues in the federal suit could be better settled in the pending state suit. It may examine the nature and scope of the pending state court proceeding; whether the claims of all parties can be adjudicated there; whether all necessary parties have been joined; or whether such parties are amenable to process. *Id.*

■ Without attempting a comprehensive investigation of the pending state suit, this Court notes that Scottsdale is not a party to the pending state court proceeding, and none of the claims in the state matter involve a declaration of rights under the insurance pol-

icy. It would appear that the issues presented in this federal suit would not be better adjudicated in the pending state suit.

Scottsdale has urged as grounds for abstention that the issue is one of distinctly state law amenable to resolution by a state court, and that the federal court interpreting Vermont law has extended coverage and the duty to defend further than the Vermont Supreme Court has been willing to reach.

The leading case involving abstention in diversity cases in which the applicable state law is unsettled is *Meredith v. City of Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). *See* 17A Wright, Miller & Cooper, Federal Practice and Procedure § 4246 (1988). In the *Meredith* case, petitioners, invoking diversity jurisdiction, sought an injunction against a municipality. The court of appeals found that the applicable state law was not clearly settled or stable, and concluded that the petitioners should be required to proceed in the state courts.

The United States Supreme Court disagreed:

> [W]e are of opinion that the difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision.

> The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.

320 U.S. at 234, 64 S.Ct. at 10. On the authority of the *Meredith* case, this Court's duty not to abstain from this suit seems clear.

The Second Circuit, however, has upheld a district court decision to abstain from deciding a declaratory judgment suit to determine insurance coverage where no state proceeding was pending, in *Smith v. Metropolitan Property & Liability Insurance Co.,* 629 F.2d 757 (2d Cir.1980). Central to its determination that discretion to abstain was appropriately exercised in this case were the facts that the parties were submitting the issue of damages to arbitration and could submit the coverage issue as well; that state law in this area was uncertain; and that the suit sought to establish a broad public policy extending beyond the private rights at issue in the case. 629 F.2d at 759–761.

The Court in *Smith* stressed that for abstention to be appropriate, the state law must be unclear and the suit must potentially have a broad impact on state policy. *Id.* at 760. The *Smith* facts are sufficiently distinct from the situation in the instant case as not to control the exercise of this Court's discretion.

Vermont law pertaining to liability coverage for intentional acts is not particularly uncertain. *See City of Burlington v. National Union Fire Insurance Company,* —— Vt. ——, 655 A.2d 719 (1994) (insured who intended injury not covered by liability insurance); *Espinet v. Horvath,* 157 Vt. 257, 597 A.2d 307 (1991) (summary judgment for insurer inappropriate where circumstances did not conclusively indicate that defendant insured knew he would hit and injure plaintiff), *appeal after remand* 161 Vt. 598, 657 A.2d 168 (1993); *State v. Glens Falls Insurance Co.,* 137 Vt. 313, 404 A.2d 101 (1979) (insurer had duty to defend suit against sheriff who mistakenly seized and sold a mobile home over owner's protests); *Otterman v. Union Mutual Fire Ins. Co.,* 130 Vt. 636, 298 A.2d 547 (1972) (insurer had duty to defend insured whose shot into a dark room killed a police officer in the next room).

Furthermore, this suit does not appear to "risk a broad and unwarranted expansion or contraction of coverage going far beyond the private rights at issue;" nor to have the potential to severely disrupt the state regulatory apparatus; nor to involve a "complicated and comprehensive regulatory statute intend-

ed to strike a balance between differing local interests;" all factors which guided the Second Circuit's determination that the *Smith* suit would have a broad impact on state policy. 629 F.2d at 761 (citations omitted). A federal decision on the merits of this case will bind only the parties in this suit, and only with respect to this claim and its attendant facts. *See id.* at 763 (Mansfield, J., dissenting).

Finally, this Court disagrees with Scottsdale's position that the federal court when interpreting insurance policy language has consistently broadened coverage and the duty to defend beyond the interpretations given by the Vermont Supreme Court. Although the Vermont Supreme Court has not yet had occasion to rule whether insurance companies have a duty to defend against claims of intentional infliction of emotional distress, it has consistently held that an insurer has a duty to defend if any claims are potentially covered by the policy at issue. *City of Burlington v. National Union Fire Insurance,* 655 A.2d at 721. The duty to defend is determined by examining the allegations which underlie the claim. *Cooperative Fire Insurance Association v. Gray,* 157 Vt. 380, 382, 599 A.2d 360 (1991). In examining the underlying allegations in a variety of suits, the Vermont Supreme Court has distinguished the act complained of from the resulting harm. An intentional act can trigger coverage if the resulting harm was not intended. *City of Burlington v. National Union Fire Insurance,* 655 A.2d at 721; *Espinet,* 157 Vt. at 259, 597 A.2d 307; *State v. Glens Falls Insurance,* 137 Vt. at 317, 404 A.2d 101; *Otterman,* 130 Vt. at 642, 298 A.2d 547. Where circumstances indicate the insured knew his act would damage the injured party, he will be taken to have intended the harm, but "[i]n equivocal circumstances, ... subjective testimony may be relied on by the trier of fact." *State v. Glens Falls Insurance,* 137 Vt. at 317, 404 A.2d 101. The federal district court rulings cited by the parties have merely been applications of that distinction already drawn by the Vermont Supreme Court: that an intentional act may constitute an occurrence, triggering coverage, if the resulting harm was not intended. *Village of Morrisville Water & Light Dept. v.*

*United States Fidelity and Guaranty Co.,* 775 F.Supp. 718 (D.Vt.1991); *Wise Insurance Brokers, Inc. v. Great American Insurance Companies,* No. 92 Civ. 349 (D.Vt. July 29, 1993).

This is not a case in which state law is unclear or where a ruling on the fact-bound claims of the parties would have broad state policy implications beyond the private rights at issue. From the information available to the Court this matter would not be better settled in the pending state action, which involves neither the same claims nor the same parties as the federal suit. Accordingly, this Court in its discretion will not abstain from considering the merits of this case.

Defendant's Motion to Dismiss is DENIED.